AMOUNT $ ___150.00___
SUMMONS ISSUED ___Yes___
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. ___Kim Abaud___
DATE ___7-3-03___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2003 JUL -3 P 12: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

---

STANLEY SVED, on Behalf of Herself and all Others Similarly Situated,

Plaintiff,

v.

POLYMEDICA CORP., STEVEN J. LEE, SAMUEL L. SHANAMAN, ARTHUR A. SICILIANO, JOHN K.P. STONE III, STEPHEN C. FARRELL, ERIC WALTERS, and WARREN K. TROWBRIDGE

Defendants.

CIVIL ACTION NO.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED

# 03 - 1 1 2 7 0 RCL

MAGISTRATE JUDGE Collings

Plaintiff, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, alleges upon the investigation made by and through plaintiff's counsel, which included, inter alia, a review of relevant public filings made by PolyMedica Corporation ("PolyMedica" or the "Company") with the Securities and Exchange Commission, ("SEC") as well as, press releases, news articles, analyst reports, and media reports concerning the Company. Furthermore, this complaint is based upon plaintiff's personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters, based upon the aforementioned investigation.

## SUMMARY OF ACTION

1.       This is a class action on behalf of all persons, other than defendants, who purchased, converted, exchanged or otherwise acquired PolyMedica securities during the period from July 23, 2001, through June 30, 2003, inclusive (the "Class Period") to recover damages caused by defendants' violations of the federal securities law.

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by

the SEC [17 C.F.R. § 240.10b-5].

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts and practices complained of herein occurred in substantial part in this District and PolyMedica maintains its corporate headquarters in this District.

5.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.    Plaintiff Stanley Sved purchased shares of PolyMedica common stock as set forth more fully in the annexed certificate at artificially inflated prices during the Class Period and suffered economic damages.

7.    Defendant PolyMedica is a Massachusetts incorporated corporation with its principal place of business located at 11 State Street, Woburn, Massachusetts. PolyMedica is a nationwide provider of direct-to-consumer medical products and supplies, primarily its Liberty brand products, through television advertising to seniors with diabetes and respiratory disease. The defendants listed below served, at all times relevant to this complaint, as senior officers and/or directors of PolyMedica:

    (a)    Steven J. Lee ("Lee") was PolyMedica's Chief Executive Officer from June, 1996, to August 4, 2002, and Chairman of the Board of Directors from June, 1996, to December 31, 2002.

    (b)    Samuel L. Shanaman ("Shanaman") became PolyMedica's interim Chief Executive Officer and Lead Director on August 4, 2002 and currently maintains the positions.

2

(c)  Arthur A. Siciliano ("Siciliano") was at all relevant times PolyMedica's President.

(d)  John K.P. Stone ("Stone") was at all relevant times PolyMedica's Senior Vice President and General Counsel.

(e)  Stephen C. Farrell ("Farrell") was at all relevant times PolyMedica's Chief Financial Officer and Senior Vice President.

(f)  Eric Walters ("Walters") was at all relevant times PolyMedica's Executive Vice President for Finance, Investor Communication and Medicare-Compliance.  Prior to that position, Walters was PolyMedica's Chief Financial Officer until  May, 2001.

(g)  Warren K. Trowbridge ("Trowbridge") was at all relevant times President of PolyMedica's subsidiary, Liberty Medical Supply, Incorporated.

8.    Shanaman, Siciliano, Stone, Farrell, Walters, and Trowbridge are sometimes herein referred to as the Individual Defendants.  Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

9.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of PolyMedica, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day

3

operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

10.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the Nasdaq National Market (the "Nasdaq"), and governed by the provisions of the federal securities laws, the defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

11.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with PolyMedica, each of the defendants had access to the adverse undisclosed information about PolyMedica's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about PolyMedica and its business issued or adopted by the Company materially false and misleading.

4

12.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

13.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of PolyMedica securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding PolyMedica's business, operations, management and the intrinsic value of PolyMedica securities; and (ii) caused plaintiff and other members of the Class to purchase PolyMedica securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased or otherwise acquired the securities of PolyMedica during the Class Period and who suffered damages (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

15.    The members of the Class are so numerous that joinder of all members is impracticable. According to the Yahoo Finance website, PolyMedica has approximately 12.4 million shares of common stock outstanding as of July 1, 2003. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records

maintained by PolyMedica or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of PolyMedica; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTUAL BACKGROUND

20.     PolyMedica is a national medical products and services company. The Company is a nationwide provider of direct-to-consumer medical products and supplies, primarily its Liberty brand products, through television advertising to seniors with diabetes and respiratory

6

disease.  A significant portion of the purchases made by consumers is billed to government health care programs such as Medicare.

21.     Throughout the Class Period, defendants issued statements, press releases, and filed quarterly and annual reports with the SEC describing the Company's business operations and financial condition.  These representations were materially false and misleading because they failed to disclose that throughout the Class Period, the Company had materially misstated its operating earnings.  Specifically, during the relevant time period, it has been reported that PolyMedica overstated earnings by capitalizing direct response advertising costs related to the acquisition of new customers rather than expensing them as incurred.  Consequently, PolyMedica recorded such advertising costs as assets rather than as expenses.  By accounting for these expenses as assets, PolyMedica could spread the cost over a two to four year period rather than accounting for the expense in the quarter in which they were incurred.  This allowed PolyMedica to understate operating expenses and overstate assets creating a false impression of the operating efficiencies and business returns of the Company.  This contrivance violates Generally Accepted Accounting Principles and the Company was aware that in the past the SEC had scrutinized this practice at other companies.

22.     On June 30, 2003, after the stock market closed, PolyMedica issued a press release announcing that as a result of discussions with the SEC regarding the expensing of the Company's direct response advertising costs, PolyMedica may be forced to restate results for the fiscal years 2002 and 2003.  The Company said the restatement would reduce its fiscal 2002 earnings to $1.76 from $2.38 per share, a reduction of 26%, its fiscal 2003 to $2.61 from $3.21, a reduction of 19%, and fiscal 2004 first quarter earnings expectations to $.66-72 from $.84-.90.  On this news, shares of PolyMedica, which had closed at $45.86 on June 30, 2003, opened for trading on July 1, 2003, at $38.56, down $7.30.  PolyMedica shares closed at $37.39 for a loss of $8.47, or 18.5%.

7

## FALSE AND MISLEADING STATEMENTS DURING CLASS PERIOD

23.     On July 23, 2001, PolyMedica issued a press release announcing the Company's results for the first quarter 2002.  The release stated, in relevant part:

> PolyMedica's First Quarter EPS Rises 48% To $0.65 Before Non-Recurring Items On A 25% Revenue Gain To $63.0 Million
>
> PolyMedica Corporation announced today that it will be reporting earnings and revenues which exceed its previous estimate. Revenues for the first fiscal quarter ended June 30, 2001 were $63 million and earnings per share diluted were $0.65. These results exceed the Company's previous guidance of $62 million in revenues and earnings per share diluted of $0.63.

24.     On July 24, 2001, the Company issued a press release announcing guidance for the second quarter of 2002.  The release stated, in relevant part:

> PolyMedica Expects Second Quarter EPS To Rise 37% To $0.73 - $0.75 On Revenues Of $68 - $69 Million; Raises Fiscal 2002 Guidance
>
> PolyMedica Corporation today provided guidance for the second quarter of fiscal 2002 and revised upwards its previous estimates for fiscal 2002.
>
> For the fiscal second quarter ending September 30, 2001, PolyMedica expects to generate net revenues of approximately $68 - $69 million and net income per diluted share of $0.73 - $0.75, a 37% increase over net income per diluted share of $0.54 in the second quarter of fiscal 2001.
>
> PolyMedica also indicated that it is changing its previously issued guidance for fiscal 2002 net revenues to approximately $275 - $276 million and net income per diluted share to approximately $2.91 - $2.93. Previous guidance for fiscal 2002 was $265 million in net revenues and $2.65 net income per diluted share.

25.     On October 25, 2001, the Company issued a press release in which it announced earnings for the second quarter 2002.  The release stated, in relevant part:

> PolyMedica's Second Quarter Net Revenues Rise 27% To $68.9 Million As Diabetes And Respiratory Businesses Continue To Drive Growth
>
> Reduced Advertising Rates Continue to Benefit the Company
>
> PolyMedica Corporation today reported financial results for its second fiscal quarter ended September 30, 2001.
>
> For the fiscal 2002 second quarter, revenues rose 27% to $68.9 million from $54.2 million for the same fiscal 2001 quarter as shipments increased to a larger customer base in the Company's Chronic Care and Professional Products segments. Excluding unusual legal and related expenses and adjustments to earnings for anticipated

8

DMERC [Durable Medical Equipment Regional Carrier] administrative overpayments, net income in the fiscal 2002 second quarter was approximately $9.6 million or $0.74 per share (diluted). Including the effect of these items, net income was $4.7 million, or $0.36 per share (diluted) compared to net income of $7.3 million, or $0.54 per share (diluted) in the year earlier quarter. The legal and related expenses in the second quarter were primarily attributable to previously reported investigations of the Company's Liberty Medical Supply and Liberty Home Pharmacy subsidiaries.

Gross margin contribution rose 30% to $45.3 million from $34.8 million in the year-earlier quarter. Positive operating cash flow increased to $6.8 million from $3.5 million in the second quarter of fiscal 2001.

Commenting on the fiscal second quarter, Chairman and CEO Steven J. Lee said, "While the expanding base of loyal customers continued to drive the growth of our core diabetes testing supplies and respiratory pharmacy businesses, earnings during this quarter were impacted by charges related to investigations and anticipated DMERC administrative overpayments. During the second quarter, we continued to strengthen our position as the leading national brand serving Medicare eligible seniors in both these chronic disease categories which are affecting a growing number of Americans of all ages. In addition to exceptionally strong demographics, reduced advertising rates have enabled us to purchase additional prime airtime on both TV and radio during the first half of fiscal 2002. This advantageous advertising environment is expected to continue to benefit our direct marketing program.

"Our performance so far this fiscal year reflects the dedication and sharp focus of the PolyMedica and Liberty Medical teams to deliver the highest level of service to chronically ill seniors during a very trying period for our Company. We are committed to the highest standard of business ethics, and in the months ahead we will continue to cooperate fully with any investigation of our Company," Mr. Lee concluded.

26.     On October 25, 2001, the Company issued a press release in which it announced guidance for the third quarter 2001.  The release stated, in relevant part:

PolyMedica Expects Third Quarter Net Revenues Of $70.5 - $72 Million

PolyMedica Corporation today provided revenue guidance for the third quarter of fiscal 2002. The Company expects to generate net revenues of between $70.5 and $72 million in the fiscal third quarter ended December 31, 2001. Earlier today PolyMedica reported net revenues of $68.9 million for the second fiscal quarter ended September 30, 2001.

27.     On January 28, 2002, the Company issued a press release in which it announced its earnings for the third quarter 2002, as well as record earnings for the year.  The release stated, in relevant part:

PolyMedica Reports Record Quarterly Revenues & Earnings Per Share in Third Quarter; Third Quarter Operating Cash Flow Rises 60% to $6.1 Million

9

PolyMedica Corporation today reported record financial results for its fiscal third quarter ended December 31, 2001.

For the fiscal 2002 third quarter, revenues rose 29% to an all time quarterly record of $72.7 million from $56.4 million in the year-earlier quarter, reflecting continuing robust demand in the Company's chronic care and professional products segments. This is the 22nd consecutive quarter of revenue growth over comparable periods.

Excluding unusual legal and related expenses, earnings per share in the fiscal 2002 third quarter were $0.76 per share (diluted), compared to $0.59 per share (diluted) in the year-earlier quarter. Including the effect of these items, earnings per share in the fiscal 2002 third quarter were $0.68 per share (diluted). These unusual legal and related expenses in the third quarter were primarily attributable to previously reported ongoing investigations of the Company and its Liberty Medical Supply and Liberty Home Pharmacy subsidiaries. For the three months ended December 31, 2001, positive operating cash flow increased 60% to $6.1 million from $3.8 million in the third quarter of fiscal 2001 representing the 12th consecutive quarter of positive operating cash flow.

Commenting on the fiscal third quarter, Chairman and CEO Steven J. Lee said, "We are very pleased with PolyMedica's third quarter earnings performance, which reflected net revenues at the high end of recently revised guidance. Our core diabetes testing supplies and respiratory pharmacy businesses continued to move forward on all cylinders. During the quarter, we invested in and pursued non-Medicare business initiatives, including the sale of oral prescription drugs, which leverage our customer base and represent growth opportunities.

"For the nine months ended December 31, 2001, positive operating cash flow increased 67% to $17.4 million from $10.4 million in the year-earlier period. The steady and reliable generation of working capital has given the Company the strength to simultaneously invest in common stock repurchases, television advertising, new state-of-the-art facilities and business start-up initiatives.

"Over the last several quarters, we have benefited from favorable television and radio advertising rates that allowed us to reach a national audience of seniors suffering from diabetes and chronic obstructive pulmonary disease. Our new facilities under construction in Florida will enable the PolyMedica and Liberty teams to continue delivering the highest level of service to a growing and very loyal customer base," Mr. Lee concluded.

28.    On January 28, 2002, the Company issued a press release in which it announced guidance for the fourth quarter 2002 and year ending March 31, 2002. The release stated, in relevant part:

PolyMedica Expects Fourth Quarter Net Revenues of $73.5 - $74.5 Million Bringing Estimated Net Revenues for FY 02 to $278 - $279 Million

PolyMedica Corporation today provided revenue guidance for the fiscal fourth quarter and year ended March 31, 2002.

The Company expects to generate net revenues of between $73.5 and $74.5 million in the fiscal fourth quarter and between $278 and $279 million for fiscal 2002,

10

approximately a 26% increase over net revenues of $220 million reported for fiscal 2001.

29.    On May 16, 2002, the Company issued a press release in which it announced record earnings for the fourth quarter 2002 and 2002 fiscal year. The release stated, in relevant part:

PolyMedica Reports a 27% Increase to $280 Million in Net Revenues for Fiscal 2002; Record Net Revenues and EPS Generated in Fourth Quarter

PolyMedica Corporation today reported record revenues of $279.7 million for the fiscal year ended March 31, 2002, a 27% increase from $220.0 million in fiscal 2001. Earnings per share (diluted) were $2.38 in fiscal 2002, up from $1.67 in fiscal 2001.

Net revenues for the fourth fiscal quarter were a record $75.1 million, a 27% gain from net revenues of $59.0 million in the quarter ended March 31, 2001. Prior net revenue guidance for the fourth quarter was $73.5 - $74.5 million. This performance is the Company's 23rd consecutive quarter of revenue growth over comparable periods, even without a supplemental 3.28% cost of living adjustment that previously was in effect during the September and December 2001 quarters.

Earnings per share (diluted) increased to a record $0.69 from $0.61 in the quarter ended March 31, 2001. Excluding unusual legal and related expenses of $1.3 million, earnings per share in the fourth fiscal quarter were $0.76 per share (diluted), compared to $0.61 per share (diluted) in the year-earlier quarter.

Positive operating cash flow increased 57% to $22.9 million in fiscal 2002 from $14.6 million in fiscal 2001, representing thirteen consecutive quarters of positive operating cash flow. This consistent generation of working capital has given the Company the ability to invest simultaneously in new facilities, additional advertising and start-up businesses.

Excluding one-time items and unusual legal and related charges described below, earnings per share from recurring operations (diluted) in fiscal 2002 were $2.91, an increase of 33% from $2.18 in fiscal 2001. The unusual legal and related charges in fiscal 2002 of approximately $5.1 million were primarily attributable to previously reported investigations of the Company's Liberty Medical Supply and Liberty Home Pharmacy subsidiaries. One-time items include a pretax adjustment for DMERC administrative overpayment notices of $5.8 million in fiscal 2002 and the $6.9 million cumulative effect of a change in accounting principle, net of taxes, in fiscal 2001.

Commenting on PolyMedica's performance, Chairman and CEO Steven J. Lee said, "Our fourth quarter and year-end results reflect PolyMedica's continuing strong national expansion of our franchise. The demographics of an aging population combined with the sharp rise of chronic diseases among Americans of all ages are key factors contributing to our growing base of loyal customers. In addition, favorable advertising rates continue to support profitable growth. During fiscal 2002, our fifth year in a row of strong revenue growth, we laid the groundwork for initiatives aimed at further profitable expansion of our business base.

"In the latter part of the year, we took a major step in our strategy of leveraging our core business expertise and technology base with the launch of Liberty Medical Supply Pharmacy (LMSP). LMSP offers oral medications to patients who take them on a frequent schedule. Without expanding beyond our existing senior customer base and their spouses, we believe that LMSP will be serving a major healthcare market, and we hope that this new business will become a very successful enterprise.

"During fiscal 2002, PolyMedica continued to develop new products and services that meet very specific health and lifestyle needs of seniors with chronic ailments. We expanded our relationship with Abbott Laboratories with new product offerings from its MediSense(R) Products division. In the fourth quarter, we signed a three-year contract to provide Medisense's blood glucose meters and strips to our large and growing base of diabetic customers. The agreement between MediSense(R) and PolyMedica represents a unique combination of MediSense's technological expertise and Liberty's brand leadership in servicing diabetic seniors.

"We are also building for the future through facility expansion and systems improvements to support continuing profitable growth. During fiscal 2002, we invested heavily in the construction and expansion of our Florida operations. By the fall of this year, we expect to add approximately 200,000 square feet of space for operations, which will place our Florida-based businesses in close proximity, resulting, we believe, in increased shipping, handling and cost efficiencies. Most importantly, we are funding the doubling of our capacity with our strong operating cash flow," Mr. Lee concluded.

30.    On May 16, 2002, the Company announced guidance for the first quarter 2003 in a press release that stated, in relevant part:

PolyMedica Expects First Quarter Net Revenues of $77.5 - $78.5 Million

PolyMedica Corporation today provided revenue guidance for the fiscal first quarter ended June 30, 2002.
The Company expects to generate net revenues of between $77.5 and $78.5 million in the fiscal first quarter.

This guidance represents approximately a 24% increase over the $63 million in net revenues reported for the quarter ended June 30, 2001 and also represents sequential quarterly growth from expected shipments to more customers.

31.    In an SEC Form 10-K for the fiscal year ended March 31, 2002, filed on June 28, 2002, the Company noted its accounting practices with regard to direct-response advertising expenditures, by stating, in part:

In accordance with Statement of Position 93-7("SOP 93-7") we capitalize and amortize direct-response advertising and related costs when we can demonstrate that customers have directly responded to our advertisements. We assess the realizability of the amounts of direct-response advertising costs reported as assets at each balance sheet date by comparing the carrying amounts of such assets to the probable remaining future net cash flows expected to result directly from such advertising. A

12

business change that impacts expected net cash flows or that shortens the period over which such net cash flows are estimated to be realized could result in accelerated charges against our earnings.

***

DIRECT-RESPONSE ADVERTISING

In accordance with Statement of Position 93-7 ("SOP 93-7"), direct-response advertising and associated costs for the Company's diabetes supplies and related products, included in the Chronic Care segment, for all periods presented are capitalized and amortized to selling, general and administrative expenses on an accelerated basis during the first two years of a four-year period. The amortization rate is such that 55% of such costs are expensed after two years from the date they are incurred, and the remaining 45% is expensed on a straight-line basis over the next two years. Management assesses the realizability of the amounts of direct-response advertising costs reported as assets at each balance sheet date by comparing the carrying amounts of such assets to the probable remaining future net cash flows expected to result directly from such advertising.

Direct-response advertising and related costs for the Company's prescription respiratory supplies, included in the Professional Products segment, for all periods presented are capitalized and amortized to selling, general and administrative expenses on a straight-line basis over a two-year period.

The Company incurred and capitalized direct-response advertising of $42.48 million, $31.47 million and $21.44 million in fiscal years 2002, 2001 and 2000, respectively. As of March 31, 2002 and 2001, accumulated amortization was $66.87 million and $36.57 million, respectively, which resulted in a net capitalized direct-response advertising asset of $52.11 million and $39.94 million, respectively. A total of $30.31 million, $19.60 million and $9.04 million in direct-response advertising was amortized and charged to selling, general and administrative expenses in fiscal years 2002, 2001 and 2000, respectively. The Company expenses in the period all other advertising that does not meet the capitalization requirements of SOP 93-7.

32.    On July 25, 2002, the Company issued a press release in which it announced record earnings for the first quarter 2003. The release stated, in relevant part:

PolyMedica Reports Record Revenues and Earnings Per Share for the Fiscal First Quarter

-- Continuing Strong Diabetes & Respiratory Growth Produce Record Results –

PolyMedica Corporation today reported record financial results for the fiscal first quarter ended June 30, 2002.

Fiscal First Quarter Highlights:
-- Net Revenues increased to $81.6 million, up 29%
-- EPS (excluding certain legal and related expenses) increased
   to $0.80, up 23%

13

-- EPS increased to $0.73, up 12%
-- Operating Cash Flow increased to $5.7 million, up 28%

For the fiscal first quarter ended June 30, 2002, PolyMedica reported net revenues of $81.6 million, a 29% increase from $63.0 million in the first quarter of fiscal 2002, and an all-time record for quarterly net revenues. This performance is the Company's 24th consecutive quarter of revenue growth over comparable periods. Earnings per share (diluted) in the first quarter, excluding legal and related expenses incurred in connection with previously reported investigations, were $0.80, an increase of 23% from $0.65 in the first quarter of fiscal 2002. Earnings per share (diluted) were an all-time record $0.73 in the fiscal first quarter, up from $0.65 per share (diluted) in the year-earlier quarter.

Positive operating cash flow increased 28% to $5.7 million in the first quarter, from $4.4 million in the year-earlier quarter, representing fourteen consecutive quarters of positive operating cash flow. This consistent generation of working capital has given the Company the ability to invest simultaneously in new facilities, additional advertising and start-up businesses.

Commenting on PolyMedica's fiscal first quarter performance, Chairman and CEO Steven J. Lee said, "We are very pleased with the continuing strong growth of our core diabetes and respiratory businesses. The growth in the incidence of diabetes, what the trade press has termed 'an epidemic,' together with a growing number of Americans suffering from chronic obstructive pulmonary disease, continue to drive our national expansion. In addition, low advertising rates enabled us to purchase a record amount of TV airtime during the quarter, and we were also able to lock in low rates for a portion of our advertising program for the remainder of fiscal 2003.

"Our new Liberty Medical Supply Pharmacy ("LMSP"), that was launched in the latter half of fiscal 2002, is producing encouraging early results. LMSP, a recent Liberty non-Medicare initiative, offers over 1,400 SKUs of oral medications that patients take on a frequent schedule for chronic diseases and other conditions such as diabetes, congestive heart failure, osteoporosis, prostate disease, hypertension, high cholesterol, arthritis and depression.

"We have invested millions of dollars in state-of-the-art call center hardware and software. Our infrastructure includes 75 network computer file servers, an optical document system storage capacity of 40 million documents, close to 1,500 desktop computer workstations that process 600,000 inbound and outbound faxes each month and a phone system that can handle 4,000 inbound calls and 4,000 outbound calls simultaneously.

"Another growth initiative that is progressing well is Liberty's new Clinical Laboratory for physician-prescribed home diagnostic testing. We are also nearing completion of the doubling of our physical plant by some 120,000 additional square feet of new facilities in Florida. This major capacity expansion and the resulting increase in shipping, handling and cost efficiencies are being funded by our strong operating cash flow. We hope to continue to build on the very strong start we made in the first quarter during the remainder of 2003," Mr. Lee concluded.

33.    On July 25, 2002, the Company announced expectations for the second quarter 2003 in a press release that stated, in part:

14

PolyMedica Expects Fiscal 2003 2nd Quarter Net Revenues of $84 - $85 Million and
Fiscal 2003 Net Revenues of $335 - $345 Million

PolyMedica Corporation today provided revenue guidance for the fiscal second
quarter ending September 30, 2002 and for fiscal 2003.
The Company expects to generate net revenues of between $84 and $85 million in
the fiscal second quarter. This guidance represents approximately a 22% to 23%
increase over the $68.9 million in net revenues reported for the quarter ended June
30, 2001 and also represents sequential quarterly growth from expected shipments
to more customers.

For the fiscal year ending March 31, 2003, PolyMedica expects to generate net
revenues of between $335 and $345 million, a 20% to 23% increase over net
revenues of $279.7 million for fiscal 2002.

34.     On September 18, 2002, the Company raised prior guidance for the second quarter

2002 in a press release that stated, in part:

PolyMedica Provides Earnings Guidance for Fiscal 2003 Second Quarter Ending
September 30, 2002

PolyMedica Corporation today announced that it expects to report earnings per share
(diluted) of $0.62 to $0.66 for the Company's fiscal 2003 second quarter ending
September 30, 2002.
Before unusual items, the Company expects to earn $0.82 to $0.84 per share (diluted)
for the quarter, compared to earnings per share (diluted) of $0.74, before unusual
items and adjustments previously reported, for the quarter ended September 30, 2001.
Unusual items for the current quarter consist of legal and related expenses incurred
in connection with previously reported investigations, as well as a non-recurring
charge related to the retirement of the Company's former CEO.

PolyMedica expects net revenues for the quarter ending September 30, 2002 to be
$86 to $87 million.

Commenting on the Company's guidance for the quarter, Samuel L. Shanaman, Lead
Director and Interim Chief Executive Officer, said, "We are committed to keeping
investors informed on a regular basis about our goals, as well as our progress in
achieving those goals. As part of that commitment, PolyMedica is reinstituting its
practice of providing EPS guidance."

The Company expects to provide earnings and net revenue guidance for its fiscal
third quarter ending December 31, 2002 in late October when it announces second
fiscal quarter results.

35.     On October 24, 2002, the Company announced earnings for the second quarter of

2003 and guidance for the third quarter of 2003 in a press release that stated, in part:

15

PolyMedica Corporation

- Reports 2Q Net Revenues of $88 Million, EPS of $0.79 -- including a benefit of $2.2 Million, or $0.11 per share

- Provides Net Revenues and Earnings Guidance for the Third Quarter Ending December 31, 2002

PolyMedica Corporation today announced its financial results for the fiscal 2003 second quarter ended September 30, 2002.

Net Revenues

Net revenues for the fiscal 2003 second quarter were $88.0 million, compared to $68.9 million for the fiscal 2002 second quarter.

Earnings

Net income for the 2003 second quarter was $9.8 million, and earnings per share (diluted) in the quarter were $0.79, compared to $4.7 million or $0.36 per share for the fiscal 2002 second quarter. Net income includes the benefit of $2.2 million, or $0.11 per share (diluted) and is related to a reduction in amounts due to Medicare and others from $4.8 million as of March 31, 2002 to $2.6 million. Based upon a favorable determination by one of the four Medicare carriers, the Company believes that its original method of billing to that carrier for albuterol and ipratropium combinations was proper.

Before all unusual items, earnings per share (diluted) were $0.84 for the quarter, compared to $0.74 for the fiscal 2002 second quarter. Unusual items for the quarter ended September 30, 2002 included the benefit related to the reduction in amounts due to Medicare and others, as well as legal and related expenses incurred in connection with previously reported investigations and the one-time expense related to the retirement of the Company's former CEO. Details on unusual items are outlined in the supplemental information table following the Consolidated Statements of Operations.

Commenting on the results, Lead Director and Interim CEO Samuel L. Shanaman, said, "We are pleased to report that PolyMedica continues to perform well. This marks the 25th consecutive quarter of net revenue growth over comparable periods, and our 15th sequential quarter of positive operating cash flow. The Company's continued strong financial performance -- which is built on our market leadership position, nationally recognized Liberty brand and powerful business model -- reflects the tremendous underlying strength of our business. Our consistent generation of cash from operations, which was $6.9 million in this quarter, has given PolyMedica the ability to invest simultaneously in new facilities, additional advertising and growth initiatives."

PolyMedica Changes Segment Reporting

The Company announced that, effective for the quarter ended September 30, 2002, it is changing the way it segments its business for reporting purposes, in order to

16

reflect how management currently views operations. The new segments are as follows:

Liberty Diabetes, Liberty's direct-to-consumer diabetes care and related businesses; Liberty Respiratory, Liberty's direct-to-consumer respiratory care business; and Pharmaceuticals, which includes Liberty's direct-to-consumer oral prescription business, the AZO product line and branded prescription urologicals.
Detailed financial information for the segments will be available in the Company's 10-Q for the quarter.

CEO Search

PolyMedica also announced that it has retained the executive recruitment firm of Heidrick & Struggles to assist PolyMedica's Board of Directors in its search for a new Chief Executive Officer. Commenting on the search, Shanaman said, "As we look to move PolyMedica into its next phase of growth, the Board is seeking a leader who can build on PolyMedica's well-established entrepreneurial culture. While we are moving expeditiously, we will take the time to find the right person. That said, we have already spoken to a number of high-caliber potential candidates, and I am confident that we will hire a well-qualified candidate who will provide PolyMedica with vision and strong strategic leadership."

Guidance

For the quarter ending December 31, 2002, the Company expects to report net revenues of $89 - $91 million and earnings per share (diluted) of $0.76 - $0.78. Earnings per share (diluted) before an estimated $0.08 per share of legal and related expenses associated with previously announced investigations are expected to be $0.84 - $0.86.

SFAS 142 - Urologicals

In connection with the adoption of Financial Accounting Standards No. 142 ("SFAS 142"), the Company has completed the first step in a transitional impairment test used to identify potential goodwill impairment. The second step will measure the amount of goodwill impairment loss. The Company will complete the second step of this transitional test in the third quarter of fiscal 2003 and expects to recognize a goodwill impairment charge related to its urological products as a cumulative effect of a change in accounting principle retroactive to April 1, 2002 that will be retroactively recorded only in its year-to-date results. The original goodwill related to these products was recorded in December 1992 in connection with the purchase of the Webcon product line. During the year ended March 31, 2002, these units represented approximately 5% of PolyMedica's consolidated revenues. As of March 31, 2002, the net book value of the goodwill related to these products was approximately $24.9 million.

36.    On January 27, 2003, the Company announced earnings for the third quarter of 2003 and guidance for the fourth quarter 2003 in a press release that stated, in part:

17

PolyMedica Corp.

- Reports 3Q Net Revenues of $90 Million, Up 24% over 3Q Fiscal 2002

- Reports 3Q EPS of $0.83 Compared to $0.68 in 3Q Fiscal 2002

- Reports Record Cash Flow from Operations of $7.8 Million s

- Raises 4Q Fiscal 2003 Guidance of Net Revenues to $94-$96 Million and EPS (Diluted) to $0.84-$0.86

PolyMedica Corporation today announced its financial results for the fiscal 2003 third quarter ended December 31, 2002.

Net Revenues

Net revenues for the fiscal 2003 third quarter were $89.9 million compared to $72.7 million for the fiscal 2002 third quarter, an increase of $17.2 million, or 23.7%.

Earnings

Net income for the 2003 third quarter was $10.4 million, and earnings per share (diluted) in the quarter were $0.83, compared to $8.5 million or $0.68 per share for the fiscal 2002 third quarter.

Before all unusual items, earnings per share (diluted) were $0.86 for the quarter, compared to $0.76 for the fiscal 2002 third quarter. Unusual items amounted to $0.03 per diluted share for the quarter. Details on unusual items are outlined in the supplemental information table following the Consolidated Statements of Operations.

Cash Flow

Cash flow from operations was $7.8 million and the Company's cash and cash equivalents balance increased from $26.8 million to $31.9 million during the quarter.

Commenting on the financial results, Lead Director and Interim CEO Samuel L. Shanaman, said, "PolyMedica continues to perform well, and we are extremely pleased to report our 26th consecutive quarter of net revenue growth over comparable periods, and our 16th sequential quarter of positive operating cash flow. From an operational perspective, we achieved a number of important objectives during this past quarter, including the successful move of our respiratory business and diabetes distribution center into our recently completed buildings in Port St. Lucie. These facilities provide us with significant additional capacity to accommodate the future expansion of our business."

Shanaman concluded, "Our consistent growth underscores the importance of our base of loyal customers who, quarter after quarter, rely on Liberty for their ongoing diabetes and respiratory needs. Our marketing and advertising generate consistent and predictable growth of that base, and this incremental effect is the underlying reason for our success and will continue to serve us well as we expand the list of products and services that we offer to our customers. There is no doubt in my mind that the most valuable asset we have is our customer base."

18

SFAS 142 - Urologicals

As announced by the Company last quarter, in connection with the adoption of Financial Accounting Standards No. 142 ("SFAS 142"), the Company has recorded a goodwill impairment loss of $23.8 million related to its urological products as a cumulative effect of a change in accounting principle retroactive to April 1, 2002 that will appear only in its year-to-date results. The original goodwill related to these products was recorded in December 1992 in connection with the purchase of the Webcon product line. During the quarter ended December 31, 2002, these units represented approximately 5% of PolyMedica's consolidated net revenues. Net of the impairment loss, the remaining net goodwill value related to these products as of December 31, 2002 was $1.0 million.

Guidance

For the quarter ending March 31, 2003, the Company increased its guidance for expected net revenues to $94 - $96 million and earnings per share (diluted) to $0.84 - $0.86. The range of earnings per share (diluted) assumes an estimated $0.05 per share of legal and related expenses associated with previously announced investigations.

37.    On April 22, 2003, the Company issued guidance for its first quarter 2004 earnings in a press release that stated, in part:

PolyMedica Corporation today announced that for its fiscal 2004 first quarter ending June 30, 2003 the Company expects to report net revenues of $97 - 100 million, compared to $81.6 million for the same period last year.

The Company also expects to report diluted earnings per share of $0.84 - $0.90 for the fiscal 2004 first quarter.

Commenting on the Company's first quarter guidance, Samuel L. Shanaman, Lead Director and Interim Chief Executive Officer, said, "Our business continues to perform very well, in spite of the fact that extended television news coverage on the war in Iraq has had some effect on the response to our TV ads early in the quarter. It's important to remember that in a typical quarter, over eighty-five percent of our revenues come from shipments to existing customers. Our business model and the loyalty demonstrated by our customers continue to provide a solid foundation for the consistent and predictable growth of our business."

PolyMedica plans to announce financial results for its fourth quarter and fiscal year ended March 31, 2003 during the week of May 26th. The Company remains comfortable with its previously announced guidance for the fourth quarter of $94 - 96 million in net revenues and $0.84 - $0.86 in diluted earnings per share.

38.    On May 28, 2003, the Company announced earnings for the fourth quarter of 2003 and 2003 fiscal year. The company highlighted the record quarterly cash flow from operations. The press release stated, in part:

PolyMedica Corporation

- 4Q EPS of $0.86 Compared to $0.69 in 4Q Fiscal 2002
- 4Q Net Revenues of $97 Million, up 29% over 4Q Fiscal 2002
- Fiscal 2003 Net Revenues of $356 Million, up 27% over Fiscal 2002
- Record Quarterly Cash Flow from Operations of $9.1 Million

PolyMedica Corporation (NNM:PLMD) today announced its financial results for the fiscal 2003 fourth quarter and fiscal year ended March 31, 2003.

Fiscal 2003 Fourth Quarter

Net revenues for the fiscal 2003 fourth quarter were $96.7 million compared to $75.1 million for the fiscal 2002 fourth quarter, an increase of $21.6 million, or 28.7%. Net income for the quarter was $10.9 million, and earnings per share (diluted) in the quarter were $0.86, compared to $8.6 million or $0.69 per share for the fiscal 2002 fourth quarter. Cash flow from operations for the quarter was a record $9.1 million.

Fiscal 2003 Full Year

Net revenues for the fiscal year ended March 31, 2003 were $356.2 million, a 27.4% increase from the $279.7 million recorded a year ago. Net income for the year was $25.6 million, and earnings per share (diluted) were $2.04, compared to $30.4 million or $2.38 per share reported for fiscal 2002. As previously announced, in connection with the adoption of SFAS 142, "Goodwill and Other Intangible Assets", the Company recorded a goodwill impairment loss of $23.8 million (pre-tax) related to its urological products as a cumulative effect of a change in accounting principal retroactive to April 1, 2002. The original goodwill related to these products was recorded in December 1992 in connection with the purchase of a urological product line.

Income before cumulative effect of accounting change (excluding the goodwill impairment charge) was $40.2 million or $3.21 per share, diluted, compared to $30.4 million or $2.38 per share, diluted, in the prior year.

Cash flow from operations for the year was $29.4 million.

Commenting on the financial results, Lead Director and Interim CEO Samuel L. Shanaman said, "The fourth quarter's financial results once again demonstrated PolyMedica's ability to continue growing while delivering solid financial performance. I am particularly pleased by the growth in our non-Medicare initiative, Liberty Pharmacy, which produced over $20 million in net revenues in its first full year of operation and ended the year at an annual revenue run rate of over $30 million."

Shanaman continued, "Our continued strong performance is especially impressive coming in a year of transition for the Company. In the past year, in addition to growing Liberty's pharmacy business, our successes included the continued growth of our core diabetes and respiratory customer base and the expansion of the base of doctors with whom we work. We also opened extensive new facilities in Port St. Lucie, Florida and realigned our Liberty business units to take maximum advantage of the opportunities that lie ahead. Given our ability to build and retain a solid customer base and the potential for expanding and extending our current product offerings, I continue to remain very excited about the Company's future."

39.     The statements referenced above were materially false and misleading when made as they misrepresented and/or omitted then existing facts which the Company was required to disclose in order to make the statements not false and/or misleading, including, but not limited to: (a) the Company lacked adequate internal accounting controls and expertise; (b) the Company failed to follow accounting rules requiring the expensing of all of the Company's advertising costs; (c) the Company intentionally misapplied accounting rules requiring the expensing of their advertising and direct marketing costs; (d) the portion of the Company's advertising costs designated as direct marketing costs and determined by the Company as qualifying for capitalization was intentionally mischaracterized and defined in order to allow the Company to manipulate profits or losses, as well as assets, through the amortization of those expenses rather than correctly expensing such costs in the quarter in which they were incurred; (e) this allowed the Company to spread out operating costs and increase the assets of the Company thereby disguising the true financial position of the Company, the actual cost being incurred to grow the Company and the actual operating margins and costs of the Company.

40.     Also, defendants Shanaman, Farrell, Lee, Stone and Walters falsely certified the Company's financial reports in contravention of Sarbanes-Oxley's mandates. Specifically, they falsely certified that:

(a)     the reports did not contain untrue statements of material fact;

(b)     the reports fairly presented in all material reports the financial condition of the Company;

(c)     that the Company maintained adequate internal controls necessary to guarantee the integrity of the Company's financial reporting; and

(d)     they had disclosed to the Board the existence of any fraud or malfeasance.

41.     In essence, the Company improperly characterized certain advertising costs so that they satisfy the capitalization requirements of Accounting Standards Executive Committee Statement of Position 93-7 ("SOP 93-7"). SOP 93-7 severely limits the methods available to companies for allocating the cost of advertising to expense although it does contains a limited

21

exception to the general rule, under Generally Accepted Accounting Principles ("GAAP"), that all advertising costs be expensed as incurred. By mischaracterizing and mistreating a portion of the Company's advertising costs related to their advertising campaign as "direct-response" advertising, the Company misrepresented that such costs qualified for the exception provided by SOP 93-7 thereby allowing the Company to capitalize such costs. These advertising costs, however, did not qualify for the exception provided in SOP 93-7 as the costs merely produced leads to possible sales rather than leading to purchase orders measurable with a degree of reliability.

42.     The effect of treating a portion of the Company's advertising costs as direct response advertising qualified for capitalization was material to the Company. It allowed the Company to amortize these costs over a two to four year period. This means that the Company was able to stretch out the costs of their advertising expenses over a significantly larger number of quarters thereby reducing the overall appearance of the Company's operating cost structure as well as creating the appearance of greater growth in earnings during the Class Period. Had the advertising costs been treated properly, the Company would have to report the costs either the first time that the advertising takes place or within the periods in which the advertising costs were incurred.

43.     In this way, PolyMedica was able to understate the expenses related to its operations and growth effort. Moreover, PolyMedica was able to artificially strengthen its balance sheet by capitalizing the advertising costs as assets with what was, in reality, expenses. Not only did this accounting contrivance allow the Company to inflate its earnings but also allow the Company to report to the market that its growth effort was resulting in greater profits than it actually was since it was extending significant costs associated with the effort over a longer period of time than is otherwise allowed for under GAAP. Accordingly, the Company's financial statements were materially misleading at all relevant times.

## THE TRUTH IS REVEALED

44.    After the stock market closed on June 30, 2003, the Company announced that as a result of ongoing discussions with the SEC, it may be forced to restate results for fiscal 2002 and 2003. The press release stated, in part:

> PolyMedica Files Form 10-K for the Year Ended March 31, 2003; Notes Discussions with SEC Regarding Expensing versus Capitalizing Direct Response Advertising Costs
>
> PolyMedica Corporation today filed its Form 10-K for its fiscal year ended March 31, 2003 in which it noted that it has been in discussions with the staff of the Securities and Exchange Commission regarding the Company's capitalizing of direct response advertising costs related to the acquisition of new customers rather than expensing them as incurred. Since acquiring Liberty in 1996, PolyMedica has capitalized such costs and amortized them generally over two to four years.
>
> "We have always believed that capitalization of our direct response advertising costs in accordance with Statement of Position 93-7 accurately reflects the economics of our business model and does a good job of matching our costs of acquiring new customers with the resulting benefits," said Lead Director and Interim CEO Samuel L. Shanaman. "However, few companies capitalize advertising costs, and some members of the investor community have suggested that fully expensing such costs as incurred would be a better presentation. For that reason, we have always provided extensive disclosure in our filings with the SEC and in our conference calls regarding our direct response advertising expenditures and the amortization of those costs. We recognize the changing environment in which we live, but we also need to conform to generally accepted accounting principles ("GAAP"). We believe our historical accounting is correct. Nevertheless, several months ago the Company and its Directors began discussions to determine whether fully expensing our future advertising costs as incurred could be a GAAP-compliant approach in today's environment."
>
> "PolyMedica's objective is, and always has been, to present our financial results accurately in accordance with GAAP," said Stephen Farrell, PolyMedica's Senior Vice President and CFO. "The issue of how to account for direct response advertising is highly technical and, in the final analysis, becomes one of judgment. The facts and circumstances in this discussion are not in dispute. Rather, it is the interpretation of the technical points of SOP 93-7 that is under consideration. We are working closely with the SEC and our auditors to reach a conclusion consistent with best practices in accounting. We had hoped to have the issue resolved by our filing deadline, but unfortunately we have not yet been able to reach a consensus. We have a strong and growing business with superb fundamentals and strong cash flow, on which the outcome of our discussions will have no effect. We are eager to resolve this issue as quickly as possible."
>
> The AICPA's Statement of Position 93-7 provides for the capitalization of direct response advertising costs when, among other things, the advertising elicits sales to customers who respond specifically to the advertisement, and the advertisement results in probable future benefit. On June 20, 2003 the SEC informed the Company that it believes the Company's advertising costs do not qualify for capitalization under SOP 93-7 because in its judgment the Company's advertising efforts produce

23

leads, or sales opportunities, rather than purchase orders. PolyMedica has historically taken the view that the steps the Company follows with a customer responding to an advertisement, which are primarily steps necessary to determine a customer's eligibility for Medicare benefits, are primarily administrative in nature and do not disqualify the Company's advertising costs from capitalization. The Company and its auditors, PricewaterhouseCoopers, are currently developing a response to the SEC to serve as a basis for further discussion.

If the Company were to revise its financial statements to reflect expensing of advertising costs as incurred on an historical basis, income per share (diluted) before cumulative effect of change in accounting principle for fiscal years 2003 and 2002 would be $2.61 and $1.76, respectively. This compares with the previously reported $3.21 for fiscal 2003 and $2.38 for fiscal 2002. In addition, under historical expensing of advertising costs, the Company's EPS guidance for its fiscal 2004 first quarter ending June 30, 2003 would be $0.66 - $0.72, compared to $0.84 - $0.90.

Fiscal Year Ended March 31,

|  | 2003 | | 2002 | |
|  | As Reported | If Adjusted | As Reported | If Adjusted |
| Income per weighted average share before cumulative effect of change in accounting principle: |  |  |  |  |
| Basic | $3.29 | $2.68 | $2.43 | $1.80 |
| Diluted | $3.21 | $2.61 | $2.38 | $1.76 |

45.    In the Company's 10-K for the fiscal year ended March 31, 2003, filed on June 30, 2003, the company stated the following with regard to the potential restatement:

In accordance with Statement of Position 93-7 ("SOP 93-7"), direct-response advertising and associated costs for our diabetes supplies and related products, included in the Liberty Diabetes segment, for all periods presented are capitalized and amortized to selling, general and administrative expenses on an accelerated basis during the first two years of a four-year period. The amortization rate is such that 55% of such costs are expensed after two years from the date they are incurred, and the remaining 45% is expensed on a straight-line basis over the next two years. Management assesses the realizability of the amounts of direct-response advertising costs reported as assets at each balance sheet date by comparing the carrying amounts of such assets to the probable remaining future net cash flows expected to result directly from such advertising. We expense in the period advertising that does not meet the capitalization requirements of SOP 93-7.

Direct-response advertising and related costs for our respiratory supplies, included in the Liberty Respiratory segment, for all periods presented are capitalized and amortized to selling, general and administrative expenses on a straight-line basis over a two-year period.

24

In accordance with SOP 93-7, we recorded the following activity related to our direct-response advertising asset for the periods presented (in thousands):

| | Fiscal Year Ended | | |
| --- | --- | --- | --- |
| | March 31, 2003 | March 31, 2002 | March 31, 2001 |
| Capitalized direct-response advertising | $48,409 | $42,478 | $31,466 |
| Direct-response advertising amortization | 36460 | 30,306 | 19,604 |
| Increase in direct-response advertising asset, net | $11,949 | $12,172 | $11,862 |
| Beginning direct-response advertising asset, net | 52112 | 39,940 | 28,078 |
| Ending direct-response advertising asset, net | $64,061 | $52,112 | $39,940 |

*** 

As discussed in Note B, since acquiring Liberty in August 1996, we have capitalized direct-response advertising costs in accordance with SOP 93-7. For several months, we have been discussing the appropriateness of this practice with the SEC. On June 20, 2003, the SEC informed us that it believes that our advertising costs do not qualify for capitalization under the direct-response advertising exception in SOP 93-7. We believe that our historical advertising is appropriate and that our advertising qualifies for capitalization. We are currently developing a response to the SEC that will be the basis for further discussion. If we are required to restate our financial statements, historical expensing of previously capitalized advertising costs would result in the following adjusted consolidated financial statement results:

| | Fiscal Year | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | As Reported 2003 | If Adjusted 2003 | As Reported 2002 | If Adjusted 2002 | As Reported 2001 | If Adjusted 2001 |
| Income before income taxes | $65,548 | $53,599 | $48,894 | $36,722 | $47,305 | $35,443 |
| Income before cumulative effect of change in accounting principle | 40,247 | 32,711 | 30,411 | 22,519 | 29,660 | 22,227 |
| Net income | $25,632 | $18,096 | $30,411 | $22,519 | $22,734 | $15,301 |
| Income per weighted average share before cumulative effect of change in accounting principle: | | | | | | |

25

| | | | | | |
|---|---|---|---|---|---|
| Basic | $3.29 | $2.68 | $2.43 | $1.80 | $2.26 | $1.69 |
| Diluted | $3.21 | $2.61 | $2.38 | $1.76 | $2.18 | $1.63 |
| Net income per weighted average share: | | | | | | |
| Basic | $2.09 | $1.48 | $2.43 | $1.80 | $1.73 | $1.16 |
| Diluted | $2.04 | $1.44 | $2.38 | $1.76 | $1.67 | $1.12 |

March 31,

| | As Reported 2003 | If Adjusted 2003 | As 2002 | If Adjusted 2002 |
|---|---|---|---|---|
| Total assets | $250,969 | $190,038 | $224,392 | $172,280 |
| Long-term deferred tax | 20,528 | – | 20,524 | 1,279 |
| Retained earnings | 98,288 | 57,885 | 75,744 | 42,877 |
| Total liabilities and shareholders' equity | $250,969 | $190,038 | $224,392 | $172,280 |

46.    A July 1, 2003, *Reuters* article summarized the Company's accounting contrivance, stating in part:

> PolyMedica shares fall on accounting issue
>
> Shares of PolyMedica Corp., a distributor of diabetes test kits, shed 15 percent on Tuesday after it said it might have to significantly lower its earnings for the past two years to change the way it accounted for advertising costs.
>
> The Woburn, Massachusetts-based company, known for its Liberty brand of diabetes testing supplies, said on Thursday evening it is still discussing the issue with the U.S. Securities and Exchange Commission (News - Websites).
>
> The SEC has questioned how PolyMedica capitalizes and amortizes advertising costs related to the acquisition of new customers.
>
> Instead of recording those expenses as the advertising money is spent, PolyMedica said it has been amortizing the expenses as new customers were gained and order products over the course of several years.
>
> If PolyMedica were to make the revisions, its earnings per share for fiscal years 2003 and 2002 would be $2.61 and $1.76, respectively, compared with the previously reported $3.21 and $2.38, the company said in a statement.
>
> "Ultimately, it would be to the benefit of PolyMedica because aside from removing a black eye, **it would make an apples-to-apples comparison to its peers**," said analyst Sharon Di Stefano of Sky Capital.

47.    As a result of the above revelations the Company's shares fell significantly and closed at $37.39 for a loss of $8.47, or 18.5%.

26

## SCIENTER ALLEGATIONS

48.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding PolyMedica, their control over, and/or receipt and/or modification of PolyMedica's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning PolyMedica, participated in the fraudulent scheme alleged herein

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

49.     At all relevant times, the market for PolyMedica securities was an efficient market for the following reasons, among others:

(a)     PolyMedica's stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)     As a regulated issuer, PolyMedica filed periodic public reports with the SEC and the Nasdaq;

(c)     PolyMedica regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     PolyMedica was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the

27

sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for PolyMedica's securities promptly digested current information regarding PolyMedica from all publicly available sources and reflected such information in PolyMedica's stock price. Under these circumstances, all purchasers of PolyMedica securities during the Class Period suffered similar injury through their purchase of PolyMedica securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of PolyMedica who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

28

public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase PolyMedica securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for PolyMedica securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of PolyMedica as specified herein.

56.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PolyMedica's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about PolyMedica and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of PolyMedica securities during the Class Period.

57.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing PolyMedica's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of PolyMedica's securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of PolyMedica's publicly-traded securities were artificially inflated, and relying directly or

indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired PolyMedica securities during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the true financial position, operating conditions and expenses that PolyMedica was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their PolyMedica securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against the Individual Defendants

63.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.    The Individual Defendants acted as controlling persons of PolyMedica within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the

31

Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.    As set forth above, PolyMedica and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

32

Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  July 3, 2003                              Respectfully submitted,

                                                 MOULTON & GANS, P.C.


                                                 By: _____
                                                       Nancy Freeman Gans, BBO #184540
                                                 33 Broad Street, Suite 1100
                                                 Boston, MA 02109-4216
                                                 Telephone: (617) 369-7979
                                                 Facsimile: (617) 369-7980

                                                 **WOLF HALDENSTEIN ADLER FREEMAN
                                                     & HERZ LLP**
                                                 Fred Taylor Isquith, Esq.
                                                 Gregory M. Nespole, Esq.
                                                 Christopher S. Hinton, Esq.
                                                 270 Madison Avenue
                                                 New York, New York 10016
                                                 Telephone: (212) 545-4600
                                                 Facsimile: (212) 545-4653

                                                 **LAW OFFICES OF MARC S. HENZEL**
                                                 Marc S. Henzel, Esq.
                                                 273 Montgomery Ave.
                                                 Suite 202
                                                 Bala Cynwyd, Pennsylvania  19004
                                                 Telephone: (610) 660-8000
                                                 Facsimile: (610) 660-8080

                                                 **LAW OFFICES OF BERNARD M. GROSS**
                                                 Debbie R. Gross
                                                 1515 Locust Street, 2nd Floor
                                                 Philadelphia, PA 19102
                                                 Telephone: (215) 561-3600
                                                 Facsimile: (215) 561-3000

33

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Stanley Sved (" plaintiff ") declares, as to the claims asserted under the Federal Securities Laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3. Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following purchases during the Class Period in the stock of PolyMedica Corp. (NASDAQ: PLMD) that are the subject of this action except those set forth below:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|------|-------------|------------------|-----------------|
| 8/7/2001 | Bought | 500 | $21.00 |
| 8/7/2001 | Sold | 500 | $19.00 |

5. In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7. I declare under penalty of perjury that the foregoing Is true and correct. Executed this 1st day of July 2003.

_____
-Signature